IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:14-CV-223-H

HERBERT BRYANT,                    )
    Plaintiff,                   )
                               )
                                 )
     v.                            )
                                 )
                                 )
VILLAGE OF BALD HEAD ISLAND,       )                    **ORDER**
NORTH CAROLINA, CALVIN R.          )
PECK, JR., in his individual       )
capacity, and CAROLINE             )
MITCHELL, in her individual        )
capacity,                          )
    Defendants.                  )

This matter is before the court on Defendant Village's Motion for Summary Judgment, [D.E. #41]; Defendants Peck and Mitchell's Motion for Summary Judgment, [D.E. #42]; Plaintiff's Motion for Extension of Time to Complete Discovery, [D.E. #37]; Plaintiff's Motion for Oral Argument in Opposition regarding D.E. #41 and #42, [D.E. #48]; and Plaintiff's Motion for Extension of Time to Respond and Length of Response, [D.E. #62]. Plaintiff has responded to defendants' Motions for Summary Judgment, [D.E. #47], and defendants have replied to plaintiff's response [D.E. #50]. The time for further filing has expired. This matter is ripe for adjudication.

## PROCEDURAL HISTORY

Plaintiff filed a complaint on October 7, 2014, alleging seven claims for relief arising from his termination as a police officer employed by the Village of Bald Head Island ("Village"). The court issued an order on August 12, 2015, [D.E. #18], dismissing plaintiff's claims in part.[1] Plaintiff filed an Amended Complaint with leave of court on November 18, 2015, [D.E. #28], adding Calvin R. Peck, Jr., and Caroline Mitchell in their individual capacities as parties to the action. Defendants filed a Partial Motion to Dismiss and Motion for Judgment on the Pleadings on December 4, 2015, [D.E. #29]. The court entered an order on September 14, 2016, [D.E. #51], granting Defendants Peck and Mitchell's Partial Motion to Dismiss and partially granting Village's Partial Motion for Judgment on the Pleadings.[2]

Defendant Village filed a Motion for Summary Judgment on June 10, 2016, [D.E. #41], and Defendants Peck and Mitchell filed a Motion for Summary Judgment on June 10, 2016, [D.E. #42]. Plaintiff responded in opposition to defendants' Motions for Summary Judgment on July 8, 2016, [D.E. #47]. Defendants

---

[1] The court notes claims against Defendant Peck in his official capacity were dismissed in the court's discretion *as duplicative* because the Village is the real party in interest.
[2] The court dismissed the claim of wrongful discharge; the claim of 42 U.S.C. § 1983 violation of the right to privacy under the United States Constitution; and all claims of violations of the North Carolina Constitution against Defendants Peck and Mitchell in their individual capacities in its order issued September 14, 2016, [D.E. #51]. The court dismissed the claim of a violation of the right to free speech under the North Carolina Constitution against Defendant Village in its order issued September 14, 2016, [D.E. #51].

2

Village, Peck and Mitchell, jointly replied to plaintiff's response on July 26, 2016, [D.E. #50]. After entry of the court's order, [D.E. #51], plaintiff filed a supplemental response on October 4, 2016, [D.E. #53], to Defendants' Motions for Summary Judgment. Pursuant to the court's order, [D.E. #51], defendants filed supplemental briefings regarding available adequate state remedies on November 10, 2016, [D.E. #58], and plaintiff responded on November 29, 2016, [D.E. #59]. Plaintiff filed a Notice of Subsequently Decided Controlling Authority on February 22, 2017, [D.E. #61], and an accompanying Motion for Extension of Time to Respond and Length of Response, [D.E. #62], on March 3, 2017. Defendants filed two Notices of Subsequently Decided Controlling Authority, [D.E. #64 and D.E. #65] on March 6, 2017, and March 12, 2017, respectively.

## STATEMENT OF FACTS[3]

Plaintiff was a public safety officer employed by Defendant Village whose employment was terminated August 28, 2014. Village is a municipality located in Brunswick County, North Carolina. Defendant Peck was the Town Manager, although he has since resigned, and Defendant Mitchell remains the Director of Public Safety for Defendant Village at all relevant times.

On August 28, 2014, plaintiff was summoned to a meeting with Defendants Peck and Mitchell. At this meeting, Defendants

---

[3] The facts are construed in the light most favorable to the plaintiff who is the non-moving party to the instant Motions for Summary Judgment.

Peck and Mitchell notified plaintiff of his immediate termination from employment as a public safety officer at Defendant Village. Plaintiff was provided a letter of termination signed by Defendant Peck informing him his termination was based on violations of Defendant Village policies "related to harassment and sexual harassment, (Article V: Conditions of Employment and Article IX), discourteous treatment of other employees, (Article IX), and inappropriate electronic communications (Article IX)." Plaintiff was told his termination was a "final decision" and was further informed the factual basis for these alleged policy violations was developed from a series of text messages exchanged between him and other public safety officers employed by Defendant Village during the period from July 25, 2014 to August 15, 2014. The relevant text message exchange involving plaintiff occurred on two days as follows:

Wednesday, August 6, 2014[4]

Plaintiff:     You got to read the state
               port pilot piece on dps.

Jeff Sypole:   Where do I find it?

---

[4] The court has carefully reviewed the entirety of the text message thread, [D.E. #47-12 at pp 1-26], and included in this order only the portions of the message thread in which plaintiff is involved.

4

Plaintiff:        All over southport. You
                  can't read it online if you
                  arent [sic] subscriber.

Jeff Sypole:      I was trying to look online.

12526227939:      What is DPS?

Plaintiff:        Department of public safety

Plaintiff:        Us dimwit

Dj Koons:         What does its day [sic]

DJ Koons:         Sau [sic]

12526227939:      I'm new, I'm new

Plaintiff:        You can't get it online.
                  Unless you are a member.

13309903780:      Hey. If everyone but two are
                  all 4 certs then why are only
                  a hand full [sic] of the
                  staff doing ems fire and
                  water rescue?

13309903780:      I like how were [sic] worried
                  about sending people to
                  county check points but not
                  worried that people who claim
                  to be ems can't take a blood
                  pressure. Or not worried
                  about doing first in engine
                  drills or even sending guys
                  who have no real fire
                  experience at least to a
                  controlled training burn.

5

Nick Terrell:     I was just thinking that the
                  other day, he only sends out
                  LEO training, he's the
                  training guy it needs to be
                  all 3 equally.

Nick Terrell:     [Expletive] it I will call
                  rich burns

Jeff Sypole:      [Expletive] it I quit.

Plaintiff:        [Expletive]. I'm getting good
                  at this twittering

Jeff Sypole:      Take pictures of it and send
                  them

Plaintiff:        Caroline says all but two
                  staff are certified in fire
                  law SMS [sic] and water

Plaintiff:        SMS=SMS

Nick Terrell:     Send the link

Plaintiff:        [Expletive].

Plaintiff:        Ems

Nick Terrell:     Technologically retarded

Jeff Sypole:      I can think of at least 4
                  people not being all 3, her
                  being one, a captain is one,
                  and 2 staff members. And if
                  you count seasonal that makes

8. Plus add in the fact that they are short at least 2 officers. As Herbie said, fear and lies

| | |
|---|---|
| Jeff Sypole: | Actually more… Mo, Sam, Courtney, James hunter, Caroline, Paul and DJ are all short at least 1 of the 3 |
| 12526227939: | Maybe she just can't count |
| Plaintiff: | What makes the statement truly awesome is that [sic] in [sic] the picture they use for the article. In the picture: Sam, Courtney, Paul, James, Scott, and Matt |
| Jeff Sypole: | Maybe she is going to Colorado for a math class, or maybe they are just complete liars |
| Jeff Sypole: | [Image of animal with following words] KNOCK KNOCK HERE COMES THE COCK |
| 13309903780: | That looks like Dj [sic] with a five o clock shadow. |
| Dj Koons: | In Colorado u [sic] do not need certs u [sic] do what ever [sic] u [sic] want just like bald head [sic] |
| Plaintiff: | I wish the water rescue class I took was a certification class someday I will have all four certs |

7

| | |
|---|---|
| Dj Koons: | Hey now Iam [sic] taller than that lol |
| Nick Terrell: | New water rescue gear, not shown but there will be cheetah print also!!! |
| Nick Terrell: | [image of Speedo-type swimwear] |
| Dj Koons: | [Expletive] mo already has these |
| 12526227939: | You guys can try mine on so you'll get the right size. |
| 13309903780: | Sam has em [sic] to I saw when he was changing into his wrestling singlet to work out. He has one of those built in pumps in the crotch region though like on dodge ball. |
| Dj Koons: | Do u [sic] have extra small |
| 12526227939: | It's short but at least it's skinny too |
| Jeff Sypole: | I don't think mo's will fit well, too small in the front and too big in the rear |
| Jef Sypole: | I'll have to wear mo's backwards |

13309903780:   He does have a gorgeous
               [expletive] though.

12526227939:   Hahaha

12526227939:   You [expletive]

12526227939:   You [expletive]

12526227939:   Hahaha

Plaintiff:     The room startin to spin real
               fast cuz of the gayness

Jeff Sypole:   Then leave and it will stop

13309903780:   Ohhh burn.

Sunday, August 10, 2014

Jeff Sypole:   [image   of   an   officer
               character   containing   the
               following words] "ONLY TWO OF
               OUR STAFF ARE NOT CERTIFIED
               IN ALL AREAS" BUT THAT DOES
               NOT INCLUDE ME, A CAPTAIN; A
               CAPTAIN  [illegible]  #1  FOR
               DUTY,  AND  FOUR  OTHER  STAFF
               MEMBERS BUT THAT IS OFF THE
               RECORD.

Plaintiff:     Umm.  I  don't  have  a  water
               rescue  cert.  count  me  in
               buddies!

Jeff Sypole:   Does  anyone  still  have  mat
               [sic]  cox  on  their  Facebook.

9

[sic] I wanted to make a
picture of something he
posted…but he either deleted
me as a friend or deleted his
facebook. [sic]

Jeff Sypole:   Wow, tough crowd tonight

Nick Terrell:  I can't find it he must have
deleted it

13309903780:   I don't have em [sic] as a
face book [sic] friend. Sorry
buddy. I'm gonna miss you
tomorrow. You were a good
kitchen [expletive]. Gonna
have Dj [sic] bring me some
eggs

Jeff Sypole:   He posted bhi's open officer
announcement like a boss

13309903780:   Lol. That's awesome

Plaintiff:     I heard on yik yak [sic] the
other day that Matt and
Nickyt were lovers

Jeff Sypole:   I heard matt [sic] was his
role model

13309903780:   Lol. They made a combination
Facebook page together. There
[sic] profile pic is them all
geared up kicking in the door
at the shoals club

Plaintiff:     It's like in the movies. You
know when at first the

10

characters hAte [sic] each other but then they become lovers. That is how it is with Matt and Nicky

Jeff Sypole: [image containing exchange from social media platform "Yik Yak"] Matt C is my hero and the protector of us all. Because that isn't illegal[.] What is there to do downtown? your [sic] all [expletive][.] WAKE THE [expletive] UP[.] If I stay over and you don't wanna [expletive] in the morning….Not okay[.] Glad I live in Wilmington cuz you people slackin on here[.] Hungover, sittin at the hair salon munchin [sic] on [illegible].

Plaintiff: It's totally on now sissies

Plaintiff: [image of can labeled C4 EXTREME"]

Plaintiff: Hahaha Matt And Nicky = superheroes

13309903780: All you need is a shot of Apple [sic] cider vinegar to pump you up. None of that [expletive].

Nick Terrell: You guys are all just jealous because Matt is the best and coolest supervisor on BHI [Bald Head Island] and he chose me to be his BFF [Best Friend Forever]

11

Nick Terrell:     C4 is the bomb

Nick Terrell:     How does apple cider vinegar get you pumped up?

Plaintiff:     Apple cider vinegar is code for meth.

13309903780:     It's a vasodilator. And it's filled with b vitamins and a bunch of bad [expletives]. Gotta [sic] drink the organic kind with the mother. Pumps you up baby.

Nick Terrell:     Oh ok code for meth, that makes more sense

13309903780:     It's pretty tuff [sic] to do a shot of it though. It's some strong stuff.

Jeff Sypole:     [image of an officer character containing the following words] WHO AM I? I'M THE DUDE, PLAYING A DUDE, DISGUISED AS ANOTHER DUDE.

13309903780:     I got some in my cupboard at work. Give I [sic] a try.

Notwithstanding the mention of the text messages at this termination meeting, plaintiff was not provided a copy of the text messages upon which his termination was based. Even so, plaintiff did not deny participation in text message exchanges

12

with other public safety officers but believed the relevant text message exchange occurred while he was off-duty and through use of his personal mobile phone. In any event, plaintiff denied he violated Defendant Village policies as alleged.

Plaintiff was not the only public safety official terminated by Defendant Village for participating in the relevant text message exchange. Officers Thomas Cannon, Jesse Conner, Donald Koons, and Nick Terrell were also terminated due to their participation in the relevant text message exchange.[5] At least five other employees of Defendant Village participated in the relevant text message exchange, neither of whom was terminated while some were simply disciplined.

As part of the termination process, Defendant Mitchell completed a Form F-5B, known as a Report of Separation, listing the basis for plaintiff's termination. On this form, bearing Defendant Mitchell's signature and a notary signature, Defendant Mitchell provided a different, or at least additional, reason for plaintiff's termination from employment with Defendant Village. She explained plaintiff was terminated because a "complaint was filed with [the Public Safety Department] regarding [plaintiff] and several others involving inappropriate electronic communications that created a hostile work environment in violation of Village policy." This form may be

[5] These officers are plaintiffs in a pending related case before this court, Cannon v. Village of Bald Head Island, No. 7:15-CV-187-H (E.D.N.C.).

13

published to law enforcement agencies for consideration in connection with future employment requests made by plaintiff.

In the days following plaintiff's termination, plaintiff sought redress by sending a letter to Defendant Village and requesting appeal of the termination because "the grounds for which [plaintiff] was terminated were unfair and that [his] job performance and personal conduct were not accurately represented." In response, Defendant Peck informed plaintiff his employment was "at-will and as such [could] be terminated for any reason or for no reason. There is no right to a grievance or appeal process."

According to Defendant Mitchell, Officer Nick Hiatt was the complainant identified as reporting the hostile work environment. Defendant Mitchell learned of the relevant text message exchange by apparent happenstance when meeting with Officer Hiatt on an unrelated allegedly unprofessional employee conduct matter involving Officer Hiatt. According to Defendant Mitchell, at this meeting Officer Hiatt threw his cell phone on the table and told Defendant Mitchell, "You want to see unprofessional? I'll show you unprofessional." [D.E. #47-4 Dep. Mitchell at 134]. Defendant Mitchell testified Officer Hiatt was offended by the text message exchange and she believed another officer, Lieutenant Matthew Cox, was the subject of harassment therein. Defendant Mitchell further testified Lieutenant Cox

14

reported he was "frustrated" and upset with the text message exchange, believing he was the subject of unseemly jokes.

According to the sworn testimony of Officer Hiatt, however, many of Defendant Mitchell's statements are either not true or a mischaracterization of his comments. For example, Officer Hiatt testified he was not offended, sexually harassed, upset, or operating within a hostile work environment. Further, Officer Hiatt testified he made no complaint alleging he was offended, sexually harassed, upset, or operating within a hostile work environment. More, Officer Hiatt testified he made no complaint alleging the text messages were unprofessional or that Lieutenant Cox was harassed or upset. Instead, Officer Hiatt testified he published the text message exchange to Defendant Mitchell evidencing his concern for public safety within Defendant Village's jurisdiction because of poor community, communication, training, and understanding of duties among employees within the Public Safety Department. In the aftermath of plaintiff's termination, Officer Hiatt rebuffed Defendant Mitchell's characterization of him as the complainant when she advised he should guard his comments in light of his role in alerting her of facts used to support plaintiff's termination.

In further apparent contradiction of Defendant Mitchell's testimony, Lieutenant Cox denied ever reading the relevant text message exchange, much less making any complaint to Defendant

15

Mitchell he was upset or offended. In his deposition, Lieutenant Cox denied being offended, harassed, sexually harassed, upset, or otherwise subject to a hostile work environment as a result of comments or actions by plaintiff or other terminated officers. Questions of fact, however, are not limited to just the origination of Defendants' ire against plaintiff and his participation in the relevant text message exchange.

According to Defendant Mitchell, she recommended termination of plaintiff and other officers with the unanimous consent of her command staff. Captain Freeman, however, disputes this statement in his affidavit testifying he neither recommended the terminations nor observed violations of Defendant Village's policies. Captain Freeman even stated he was present at a meeting with Defendant Mitchell where the terminations of plaintiff and the others were discussed, and when asked whether he supported the decision to terminate them at that meeting he indicated he did not support the decision. No notes have been produced from this meeting or any other relevant meetings Defendant Mitchell may have had with her command staff, and it appears no notes were taken to aid in the resolution of this factual question.

As part of the decision-making process, Defendant Mitchell admits she made no determination about whether the text messages sent by plaintiff or the other terminated officers constituted

16

harassment, sexual harassment, discourteous treatment of other employees, or inappropriate electronic communications. Instead, in her deposition, Defendant Mitchell stated the question of plaintiff's termination was limited to whether she and the command staff wanted plaintiff and the other terminated officers to be "part of [the] team." (Mitchell Deposition, [D.E. #47-4], at 177, 293.) However, when asked about her characterization of the relevant text message exchange, Defendant Mitchell said, "It's a bunch of guys just talking [expletive], excuse the term, but they're just talking [expletive]." (Id. at 293.)

After Defendant Mitchell's review of the relevant text message exchange and consultation with her command staff she delivered her recommendations to Defendant Peck. As a result of his review, Defendant Peck reached the same conclusion as Defendant Mitchell, stating in his deposition "Mr. Cannon and the rest were terminated because they were jerks. That they were disrespectful -- disrespectful of the chain of command, and once I determined that, I turned it over to HR to write the letter." (Peck Deposition, [D.E. #47-3], at 83) While as at-will employees, plaintiff and the other officers who were terminated may have been terminated "because they were jerks" or "disrespectful of the chain of command[,]" the scope of allegations contained in Plaintiff's termination letter and Form F-5B appears broader than the reasons relied upon in the

17

decision-making process as stated by Defendants Mitchell and Peck in their depositions.

After providing plaintiff his termination letter, the Form F-5B completed by Defendant Mitchell was provided to the North Carolina Criminal Justice Education & Training Standards Commission where it was made available to law enforcement agencies for consideration in connection with any future law enforcement employment sought by plaintiff. On August 29, 2014, the day after plaintiff's termination, local media requested copies of the termination letter. Believing the North Carolina's Public Records Act required compliance with the media requests, Defendant Village turned over copies of the termination letters as requested. Plaintiff filed suit on October 7, 2014.

## COURT'S DISCUSSION

### I. Plaintiff's Motion for Extension of Time to Complete Discovery [D.E. #37]

For good cause having been shown upon the motion of plaintiff, plaintiff's motion for extension of time to complete discovery, [D.E. #37], is GRANTED.

### II. Plaintiff's Motion for Oral Argument in Opposition regarding D.E. #41 and #42 [D.E. #48]

After careful review and consideration of the motion of plaintiff and determination the briefs submitted to the court by both parties are sufficient, plaintiff's motion for oral

argument in opposition regarding D.E. #41 and #42, [D.E. #48], is DENIED.

### III. Plaintiff's Motion for Extension of Time to Respond and Length of Response [D.E. #62]

After careful review and consideration of the motion of plaintiff and determination the briefs submitted to the court by both parties are sufficient, plaintiff's motion for extension of time to respond and length of response, [D.E. #62], is DENIED.

### IV. Standard of Review

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248, but "must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e) (emphasis in original). A mere scintilla of evidence supporting

the case is not enough. Anderson, 477 U.S. at 252. The court construes the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in the non-movant's favor. Matsushita Elec. Indus. Co., 475 U.S. at 587-88.

## V. Analysis

Defendant Village's motion for summary judgment, [D.E. #41], and Defendants Peck and Mitchell's motion for summary judgment, [D.E. #42], are before the court.

### A. Municipal Liability of Village under Monell for Plaintiff's Free Speech, Due Process, Liberty Interest, and Right to Privacy Claims under 42 U.S.C. § 1983

Defendant Village has moved for summary judgment on plaintiff's claims under 42 U.S.C. § 1983 for violation of his right to free speech, violation of his procedural due process rights by deprivation of his liberty interest, and violation of his right to privacy under the United States Constitution.

"[T]he touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution [or laws of the United States]." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690 (1978). Absent "official . . . policy of some nature," a local governmental body is simply not liable under § 1983. Id. (noting that "official policy" may include governmental custom). When a plaintiff protests a single employment decision involving no violation pursuant to a

20

municipal policy and the decision was made by an official without final policymaking authority, the municipality is not liable for § 1983 violations. Greensboro Prof'l Fire Fighters Ass'n, Local 3517 v. City of Greensboro, 64 F.3d 962, 963, 966 (4th Cir. 1995).

Plaintiff argues, citing Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986), a municipality is liable even for a single decision when the decision is made by an official who has final decision making authority to establish municipal policy with respect to the action ordered. Pembaur, 475 U.S. at 481. However, Crowley v. Prince George's Cty, 890 F.2d 683, 684-87 (4th Cir. 1989), quotes Pembaur, and holds there is a distinction between the discretionary authority to make final decisions on a particular matter and the authority to make final policy on that matter. Crowley, 890 F.2d at 686-87 (holding the fact that a police chief had "final" discretion to hire and fire employees of his police department did not establish that he was a "final policymaker" with regard to municipal employment policy); accord Greensboro Prof'l Fire Fighters Ass'n, 64 F.3d at 966. The Supreme Court has found "whether an official had final policymaking authority is a question of state law." Pembaur, 475 U.S. at 483.

North Carolina state law vests final policymaking authority in the elected city council. See N.C.G.S. § 160A-67 ("the

21

government and general management of the city shall be vested in the council.") As to personnel matters, North Carolina law is quite specific about the roles of the elected city council and the city manager – North Carolina law provides while a city manager is the municipality's "chief administrator," he must comply with the general employment policies set by the council. See N.C.G.S. § 160A-148(1) (city manager must act "in accordance with such general personnel rules, regulations, policies, or ordinances as the council may adopt.") Because Defendant Peck, who made the final decision to fire plaintiff was the city manager and not the city council, Defendant Peck did not have final policymaking authority, and thus there was no official policy or custom violation here.

Therefore, Defendant Village's motion for summary judgment on plaintiff's 42 U.S.C. § 1983 claims for violation of his right to free speech, violation of his due process rights by deprivation of his liberty interest, and violation of his right to privacy under the United States Constitution is GRANTED.

**B. North Carolina Constitutional Right to Privacy**

Defendant Village has moved for summary judgment on plaintiff's claim under the North Carolina Constitution for violation of his right to privacy. Direct claims under the North Carolina Constitution "are permitted *only* in the absence of an adequate state remedy, and where an adequate state remedy

22

exists, those direct constitutional claims must be dismissed."
*Wilcox v. City of Asheville*, 730 S.E.2d 226, 236 (N.C. Ct. App.
2012) (emphasis in original and internal quotations omitted);
see *Corum v. Univ. of N.C.*, 413 S.E.2d 276, 289 (N.C. 1992). An
adequate state remedy must give the claimant "at least the
opportunity to enter the courthouse doors and present his claim
and must provide the possibility of relief under the
circumstances." *Wilcox*, 730 S.E.2d at 299 (emphasis in original
omitted and internal quotations omitted). Thus, the chance as
opposed to the guarantee of success is the measure. *Id.* at 299-
300. The plaintiff bears the burden of establishing there is no
"adequate" alternative state law remedy. See *Patterson v. City
of Gastonia*, 725 S.E.2d 82, 90 (N.C. Ct. App. 2012) ("Therefore,
in order for plaintiffs to proceed under the state constitution,
they must establish that they lacked an adequate alternative
state remedy.").

In his supplemental briefing, plaintiff has not met his
burden of establishing that he lacks an adequate alternative
state remedy sufficient to proceed with his North Carolina
Constitutional claim of violation of the right to privacy, as he
stands on his briefing to the court prior to the order entered

September 14, 2016, without providing any additional case law.[6] [D.E. #59 at 1-2].

Therefore, Defendant Village's motion for summary judgment on plaintiff's claim under the North Carolina Constitution for violation of his right to privacy is hereby GRANTED.

## C. **Wrongful Discharge**

Defendant Village has not presented facts or case law to support a motion for summary judgment on the claim of wrongful discharge, therefore this claim will survive Defendant Village's motion for summary judgment, [D.E. #41].

## D. **Intentional Infliction of Emotional Distress**

Defendants Village, Peck, and Mitchell have moved for summary judgment on plaintiff's claim for Intentional Infliction of Emotional Distress ("IIED"). A claim for IIED under North Carolina law requires proof defendant engaged in "(1) extreme and outrageous conduct, (2) which [was] intended to cause and [did] cause (3) severe emotional distress in another." Dickens v. Puryear, 302 N.C. 437, 452 (1981).

Defendants argue plaintiff is unable to present evidence sufficient to satisfy elements one and three of IIED. Plaintiff's response did not address the claim of IIED. Namely,

___

[6] Plaintiff does assert, and the Court notes, that plaintiff only pled North Carolina constitutional violations as to privacy and free speech. [D.E. #59]. Considering the claim under the North Carolina Constitution for violation of free speech was dismissed in the court's prior order, [D.E. #51], only the claim under the North Carolina Constitution for violation of the right to privacy is before the court today.

24

defendants argue plaintiff is unable to show he suffered severe emotional distress because he testified in his deposition when asked if he suffered from any "disabling" mental condition that he did not. [D.E. #47-3 Dep. of Herbert Bryant at 123.] Furthermore, plaintiff affirmed that he was "fit for duty," and did not have any such condition that would prevent him from being able to work. Id. Plaintiff does not contest this. Therefore, as there is no genuine issue of material fact regarding the severe emotional distress suffered by plaintiff, and viewing the facts in the light most favorable to the non-moving party, defendants are entitled to judgment as a matter of law on the claim of IIED.

For the foregoing reasons, both Defendant Village's and Defendants Peck and Mitchell's motions for summary judgment as to the claim of IIED are GRANTED.

### E. Defamation

#### a. Actual Malice

Defendants Village, Peck, and Mitchell have moved for summary judgment on plaintiff's claim for defamation, slander, and libel under North Carolina law. To prove a claim of defamation, a plaintiff must show four elements: (1) defendants published false oral (slander) or written (libel) statements, (2) of or concerning the plaintiff, (3) which were published to a third person, (4) resulting in damage to the plaintiff's

25

reputation. Tyson v. L'Eggs Products, Inc., 351 S.E.2d 834, 840 (N.C. Ct. App. 1987). When the plaintiff is a public official, as here, and the allegedly defamatory statements concern his official conduct, the plaintiff must also prove actual malice. Varner v. Bryan, 440 S.E.2d 295, 299 (N.C. Ct. App. 1994) (quoting New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964)); Dellinger v. Belk, 238 S.E.2d 788, 789 (N.C. Ct. App. 1977) (citing Cline v. Brown, 210 S.E.2d 446 (1974), cert. den., 211 S.E.2d 793 (N.C. 1975) (holding a law enforcement officer is a public official). To prove actual malice, the plaintiff must show by clear and convincing evidence, the defendant made the statement with knowledge of its falsity or with reckless disregard of whether the statement was false. Varner, 440 S.E.2d at 299 (quoting New York Times Co. v. Sullivan, 376 U.S. at 270). At the summary judgment stage, for the plaintiff's claim to survive, the plaintiff must show sufficient evidence to support a juror finding actual malice. Varner, 440 S.E.2d at 299 (quoting Anderson, 477 U.S. at 257.

Plaintiff's defamation claim is based on allegedly false statements made in plaintiff's termination letter and Form F-5B. (Am. Compl. at 16-17). Specifically, in Form F-5B Defendant Mitchell wrote "[a] complaint was filed with this agency regarding this Officer and several others involving inappropriate electronic communications that created a hostile

26

work environment in violation of Village policy." [D.E. #47-5 Form F-5B at 1-2].

Plaintiff cites depositions and affidavits which show the officer who was an alleged "complainant" and the lieutenant who felt harassed, actually never made complaints to Defendant Mitchell as to feeling offended or sexually harassed by plaintiff or that they worked in a hostile work environment due to actions by plaintiff. [D.E. #47-8 Aff. Of Nick Hiatt at 1,2; D.E. #47-9 Supp. Aff. Of Nick Hiatt at 1; D.E. #47-10 Dep. Of Matthew Cox at 30-33]. Defendant Peck admitted in his deposition he thought the officers on the text message thread who were terminated were "jerks" and that they were "disrespectful of the chain of command." [D.E. #47-3 Dep. Of Calvin Peck at 83]. Defendant Mitchell admitted that after a review of the text messages, she made the decision with Captain Freeman, Captain Swanson, and Captain Anderson that they did not want plaintiff "as a part of [their] team" and that they found some of the messages offensive. [D.E. #47-4 Dep. of Caroline Mitchell at 160, 177]. However, Captain Freeman stated in his affidavit he did not support the recommendation that plaintiff be terminated and was unaware of any person feeling harassed by any of the terminated officers. [D.E. #47-11 at 1, 2]. Therefore, the statement in Form F-5B "[a] complaint was filed" could be considered by a reasonable juror to be a false statement, and

27

testimony within depositions would give credibility to defendants' knowledge of falsity or reckless disregard of falsity with which that statement was made.

As to the statements made within plaintiff's termination letter that his participation in text messages constituted sexual harassment and created a hostile working environment, these statements could be found false by a reasonable juror considering the definition of sexual harassment in Village's Policy Guidelines. [D.E. #47-14 Village Policy at 4]. There is no evidence these messages, exchanged on personal cellphones while plaintiff was off-duty, created a hostile work environment. The only officers identified by defendants as having their work affected by the messages were Officer Hiatt and Lieutenant Cox, and both have denied sexual harassment. [D.E. #47-8 Aff. Of Nick Hiatt at 2; D.E. #47-10 Dep. Of Matthew Cox at 30-33, 38-39]. Plaintiff shows the definition contained in Defendant Village's Policy is the exact same definition of "sexual harassment" that is a violation of Section 703 of Title VII set forth by EEOC. 29 C.F.R. § 1604.11. For Title VII cases, the Supreme Court has determined that "sexual harassment" causing a "hostile work environment" must be "sufficiently severe or pervasive to 'alter the conditions of [the victim's] employment and create an abusive working environment.'" Meritor Savs. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986) (quoting

28

Henson v. City of Dundee, 682 F.2d 897, 904 (11th Cir. 1982)).
In addition, the only conduct defendants identified that formed
the basis of their claims of sexual harassment was a single
series of text messages and not a pattern of conduct. [D.E. #47-
4 Dep. Of Caroline Mitchell at 144-45; D.E. #47-3 Dep. Of Calvin
Peck at 60; D.E. #47-2 at 1].  Plaintiff has shown evidence
exists of actual malice.

### b. **Privilege**

Additionally, defendants argue they are entitled to
absolute or qualified privilege.  A statement which is
absolutely privileged will not support a defamation claim even
if the statement was knowingly false and made with express
malice. Smith v. McDonald, 895 F.2d 147, 148-49 (4th Cir.
1990). However, absolute privilege only applies where the
communication is made in the course of a judicial proceeding.
Id. at 149. "Judicial proceeding" has been defined broadly, Id.
at 149, including "communications made in the course of an
administrative proceeding . . . [where] the administrative
officer or agency is exercising a judicial or quasi-judicial
function." Id. (quoting Mazzucco v. North Carolina Bd. of Med.
Exam'rs., 228 S.E.2d 529, 532 (N.C. Ct. App. 1976)). Therefore,
a quasi-judicial function includes administrative investigation
into the performance of an employee to determine whether to
terminate as well as investigation to substantiate the

29

evidentiary file in support of a decision to terminate. Angel
v. Ward, 258 S.E.2d 788, 792 (N.C. Ct. App. 1979). In the
instant case, there was no exercise of quasi-judicial function
because the termination already occurred as the allegedly
defamatory statements were made in the termination letter and
Form F-5B.

Qualified privilege applies where defendants can establish
(1) good faith on the part of the defendant; (2) the statement
is made on the subject matter in which the declarant has an
interest, right or duty; (3) the statement is communicated to a
person with a corresponding interest or duty; (4) on a
privileged occasion; and (5) the statement is made in a manner
warranted by the duty, right, or interest at issue. Averitt v.
Rozier, 458 S.E.2d 26, 29 (N.C. Ct. App. 1995) (quoting
Shillington v. K-Mart Corp., 402 S.E.2d 155, 159 (N.C. Ct. App.
1991)). Once established that an occasion is privileged, there
is a presumption of good faith; Id. at 29, however, this
presumption of good faith can be rebutted by plaintiff's showing
of actual malice. Harris v. Proctor & Gamble Mfg. Co., 401
S.E.2d 849, 851 (N.C. Ct. App. 1991). Even if statements made in
Form F-5B were protected under the qualified privilege because
Defendant Mitchell had a duty to report to the Training
Standards Commission, plaintiff has brought forth evidence from
which a reasonable juror could find actual malice sufficient to

30

rebut qualified privilege. Defendants' argument regarding absolute or qualified privilege fails.

### c. Opinion

Finally, defendants in the instant case argue the allegedly defamatory statements constituted solely opinion. "Because defamation requires a false statement at its core, opinions typically do not give rise to liability since they are not susceptible of being proved true or false." Piccone v. Bartels, 785 F.3d 766, 771 (1st Cir. 2015) (citing Milkovich v. Lorain Journal Co., 497 U.S. 1, 19-20 (1990)). "When a speaker plainly expresses 'a subjective view, an interpretation, a theory, conjecture or surmise, rather than [a] claim[ ] to be in possession of objectively verifiable [false] facts, the statement is not actionable.'" Biospherics, Inc. v. Forbes, Inc., 151 F.3d 180, 186 (4th Cir. 1998) (quoting Haynes v. Alfred A. Knopf, Inc., 8 F.3d 1222, 1227 (7th Cir. 1993)). However, "[t]hough opinion per se is not immune from a suit for libel, a statement is not actionable unless it asserts a provably false fact or factual connotation." Chapin v. Knight-Ridder, Inc., 993 F.2d 1087, 1093 (4th Cir. 1993) (citing Milkovich, 497 U.S. at 19). Therefore, a statement that asserts provably false fact or factual connotation is actionable under defamation. Plaintiff has shown evidence that the statements in the termination letter and Form F-5B were provably false fact or

31

factual connotation and not opinion. Defendants' argument fails.

Therefore, both Defendant Village's and Defendants Peck and Mitchell's motions for summary judgment as to the claim of defamation are DENIED.

## F. Free Speech

Defendants Peck and Mitchell have moved for summary judgment on plaintiff's claim under 42 U.S.C. § 1983 for retaliatory discharge in violation of his right to free speech under the United States Constitution.

### a. Introduction

In Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968) and Connick v. Myers, 461 U.S. 138, 142 (1983), the Supreme Court analyzed the competing interests at play between the public employee "as a citizen, in commenting upon matters of public concern" and the government, "as an employer, in promoting the efficiency of the public services it performs through its employees." Connick, 461 U.S. at 142 (quoting Pickering, 391 U.S. at 568). In McVey v. Stacy, 157 F.3d 271 (4th Cir. 1998), the Fourth Circuit laid out the test for balancing the Pickering and Connick competing interests in the context of a retaliatory discharge claim. The McVey test requires this court to determine:

32

> (1) whether the public employee was speaking as a
> citizen upon a matter of public concern or as an
> employee about a matter of personal interest;
> (2) whether the employee's interest in speaking upon
> the matter of public concern outweighed the
> government's interest in providing effective and
> efficient services to the public; and (3) whether
> the employee's speech was a substantial factor in
> the employee's termination decision.

McVey, 157 F.3d at 277-78 (citing Stroman v. Colleton Cty. Sch.
Dist., 981 F.2d 152, 156 (4th Cir. 1992)). Inquiries under this
test are very specific as the Supreme Court has found
"'[b]ecause of the enormous variety of fact situations in which
critical statements by . . . public employees may be thought by
their superiors . . . to furnish grounds for dismissal, we do
not deem it either appropriate or feasible to lay down a general
standard against which all such statements may be judged.'"
Connick, 461 U.S. at 154 (quoting Pickering, 391 U.S. at 391).
The first two elements of the test are questions of law, and the
third is a question of fact. Crouse v. Town of Moncks Corner,
848 F.3d 576, 583 (4th Cir. 2017) (citing Brooks v. Arthur, 685
F.3d 367, 371 (4th Cir. 2012)).

### b. Speech by Citizen of Public Concern

Under Crouse, the first element of the McVey test is a two-
part inquiry based upon whether the employee spoke as a private
citizen or as a public employee pursuant to the employee's
duties, Id. (citing Garcetti v. Ceballos, 547 U.S. 410, 421),

and "whether the content of the speech addressed 'a matter of
interest to the community' rather than 'complaints over internal
office affairs.'" Id. (citing Connick, 461 U.S. at 149). To
determine whether the person spoke as a citizen or as an
employee, the court should consider "whether speech was made in
the course of an employee's job" by "inquir[ing] into the
employee's 'daily professional activities.'" Id. at 584
(quoting Hunter v. Town of Mocksville, 789 F.3d 389, 397 (4th
Cir. 2015)). "The First Amendment does not protect speech made
pursuant to a government employee's official duties, even when
that speech is upon a matter of public concern." Id. (citing
Garcetti, 547 U.S. at 421). However, the Supreme Court has also
observed "[v]igilance is necessary to ensure that public
employers do not use authority over employees to silence
discourse, not because it hampers public functions but simply
because superiors disagree with the content of employee's
speech." Rankin v. McPherson, 483 U.S. 378, 384 (1987).

Once the determination is made regarding whether an
individual spoke as an employee or as a citizen, the court
should determine whether the speech was of public concern by
examining the "content, form, and context of a given statement,
as revealed by the whole record." Campbell v. Galloway, 483 F.3d
258, 267 (4th Cir. 2007) (citing Connick, 461 U.S. at 147-48).
However, the Fourth Circuit in Crouse observes "[t]o be sure,

'[p]ublic employees do not forfeit the protection of the Constitution's Free Speech Clause merely because they decide to express their views privately rather than publicly.'" Crouse, 848 F.3d at 586 (quoting Cromer v. Brown, 88 F.3d 1315, 1326 (4th Cir. 1996)).

"[The Fourth Circuit] ha[s] explained that the answer to the public concern inquiry rests on 'whether the public or the community is likely to be truly concerned with or interested in the particular expression, or whether it is more properly viewed as essentially a private matter between employer and employee.'" Edwards v. City of Goldsboro, 178 F.3d 231, 247 (4th Cir. 1999) (citing Berger v. Battaglia, 779 F.2d 992, 999 (4th Cir. 1985)). "Speech involves a matter of public concern when it involves an issue of social, political, or other interest to a community." Kirby v. City of Elizabeth City, 388 F.3d 440, 446 (4th Cir. 2004) (citing Connick, 461 U.S. at 146). "Matters relating to public safety are quintessential matters of 'public concern.'" Goldstein v. Chestnut Ridge Volunteer Fire. Co., 218 F.3d 337, 353 (4th Cir. 2000) (citing Edwards, 178 F.3d at 247). In Goldstein, the Fourth Circuit found that speech of a firefighter consisted of matters of public concern when speech "included allegations that some emergency personnel lacked required training and certifications; that the leadership of the company was overlooking violations of safety regulations; and that the

35

conduct of crew members was jeopardizing the safety of the crew and of the public." Id. at 355.

Speech involves a matter of personal interest when it concerns "personal grievances, complaints about conditions of employment." Campbell, 483 F.3d at 267 (4th Cir. 2007). When speech is mixed such that it contains both matters of public concern and matters of personal interest, the court should consider the speech as a "single expression of speech to be considered in its entirety." Stroman, 981 F.2d at 157.

In the instant case plaintiff's speech during the period of August 6, 2014 to August 10, 2014 was in the form of a series of text messages. As to context, the text messages were sent from plaintiff's personal cellphone to fellow officers while plaintiff was off-duty. [D.E. #47-1 at 101]. The text messages were not published by plaintiff to the public via news media or through personal social media. Plaintiff was not acting in the course of ordinary employment or pursuant to his official duties when he was communicating with co-workers privately while he was off-duty. Plaintiff has introduced sufficient evidence for a reasonable juror to conclude that plaintiff was speaking as a citizen, not as a government employee.

The content of the text messages varied. Plaintiff sent twenty text messages on two days during the relevant period: Wednesday, August 6, 2014 and Sunday, August 10, 2014. Thirteen

of plaintiff's twenty messages were related to his concerns with an article posted in which he doubted the truthfulness of statements attributed to Defendant Mitchell. [D.E. #47-12 at 4-12, 19-23]. In particular, the text messages refer to a news article regarding the department with its implied source of information being Defendant Mitchell, that the department had all but two of the twenty on staff as certified in law enforcement, firefighting, emergency medical, and water rescue. [D.E. #47-13].

The text messages show an incredulity regarding these statements knowing them to be totally false. [D.E. #47 at 6; D.E. #47-12 at 4-12]. Defendant Mitchell has admitted that none of the officers at the time were "certified" in water rescue. [D.E. #47-4 at 87-88]. The discussion regarding the truthfulness of the article, in which allegedly untrue statements about certification of officers were attributed to Defendant Mitchell, was an expression of "'concern about the inability of the [Department] to carry out its vital public mission effectively.'" Liverman v. City of Petersburg, 844 F.3d 400, 410 (citing Cromer, 88 F.3d at 1325-26). As in Goldstein, where the speech "included allegations that some emergency personnel lacked required training and certifications; that the leadership of the company was overlooking violations of safety regulations; and that the conduct of crew members was

jeopardizing the safety of the crew and of the public," the speech in the instant case raised concerns about officer certification and whether Defendant Mitchell was speaking truthfully regarding certification of officers. Goldstein, 231 F.3d at 355. Thus, plaintiff was speaking as a citizen on a matter of public concern, as the news article was already accessible to the public via a common news source and the assertion that officers were certified who were allegedly not certified came to bear on the truthfulness, credibility, and strength of the Department to "carry out its vital public mission effectively." Liverman, 844 F.3d at 410.

The court may not divide the text message into parts of public concern and of personal grievance, but must consider the messages as a "single expression of speech to be considered in its entirety." Stroman, 981 F.2d at 157. While there were seven messages sent by plaintiff that were actually off-duty commentary on matters of personal interest and not "a matter of interest to the community," Connick, 461 U.S. at 149, the "thrust" of the speech as a single expression was a matter of public concern, Cf. Liverman, 844 F.3d at 409.

### c. **Pickering-Connick** Balancing Test

Following a finding of speech by a citizen on a matter of public concern, "Pickering requires courts to balance 'the public employee's interest in speaking on matters of public

38

concern against the government's interest in providing effective and efficient government through its employees.'" Crouse, 848 F.3d at 585 (quoting McVey, 157 F.3d at 278). "[S]peech on public issues occupies the 'highest rung of the hierarchy of First Amendment values,' and is entitled to special protection." Connick, 461 U.S. at 145 (internal citations omitted). Specifically, the Fourth Circuit in Crouse observes "[f]or this inquiry, courts 'must take into account the context of the employee's speech . . . and the extent to which it disrupts the operation and mission of the agency.'" Crouse, 848 F.3d at 585 (quoting McVey, 157 F.3d at 278). "'The public's interest in hearing the employee's speech also weighs in the balance.'" Crouse, 848 F.3d at 585 (quoting Brickey v. Hall, 828 F.3d 298, 304 (4th Cir. 2016)). "Police are at the restricted end of the spectrum because they are 'paramilitary' – discipline is demanded, and freedom must be correspondingly denied." Maciariello v. Sumner, 973 F.2d 295, 300 (4th Cir. 1992) (citing Jurgensen v. Fairfax Cty, 745 F.2d 868, 880 (4th Cir. 1984)).

Plaintiff asserts defendants have not made a showing of disruption within the police force due to the comments made by plaintiff. Plaintiffs cite McVey for the factors to be considered in the balancing test:

> whether the employee's speech (1) impairs discipline by superiors; (2) impairs harmony among co-workers; (3) has a detrimental

39

> impact on close working relationships; (4)
> impedes the performance of the public
> employee's duties; (5) interferes with the
> operation of the agency; (6) undermines the
> mission of the agency; (7) is communicated
> to the public or to co-workers in private;
> (8) conflicts with the responsibilities of
> the employee within the agency; and (9)
> makes use of the authority and public
> accountability the employee's role entails.

McVey, 157 F.3d at 278 (citing Rankin, 483 U.S. at 388-89) (internal quotation marks omitted). The police force has a significant need for discipline and adherence to the chain of command as a paramilitary organization, but defendants have not shown the text messages affected the working environment so as to "impai[r] discipline by superiors; impai[r] harmony among co-workers; ha[ve] a detrimental impact on close working relationships; imped[e] the performance of the public employee's duties; interfer[e] with the operation of the agency; undermin[e] the mission of the agency; conflic[t] with the responsibilities of the employee within the agency; or mak[e] use of the authority and public accountability the employee's role entails." Id. The record has contradicted Defendant Mitchell's assertion that a complaint was filed or that any officers were harassed, sexually harassed, or otherwise felt the text messages damaged working relationships. In fact, the alleged "claimant" said he was not even offended by the text messages. Additionally, the speech was made privately to co-

workers, which lessens the interest of the agency in efficiency as there is less threat to the agency of losing public respect, causing "departmental disruption." Cf. Grutzmacher v. Howard Cty, No. 15-2066, 2017 WL 1049473, at *8 (unpublished) (finding greater efficiency interest for government agency when speech made public as greater risk of "departmental disruption"). Therefore, the interest of employee speaking as a private citizen on a matter of public concern outweighs the interest of the government because in the instant case as in Liverman, the speech raising "[s]erious concerns regarding officer training and supervision" overcame the showing of the defendants as to government's interest in preventing workplace disruption. Liverman, 844 F.3d at 411.

### d. Causal Relationship Between Speech and Termination

As to the third element of the McVey test, plaintiff has presented sufficient evidence for a reasonable juror to find plaintiff was fired for his speech. [D.E. #47-2 Bryant Termination Letter]. To the extent defendants dispute the causal relationship between plaintiff's speech and his termination, the uncontested signed termination letter contradicts their assertions on their briefs. Therefore, summary judgment is denied as to this issue.

### e. Qualified Immunity as to Defendants Peck and Mitchell

Defendants Peck and Mitchell assert they are entitled to qualified immunity in their individual capacities on plaintiff's claim under 42 U.S.C. § 1983 for retaliatory discharge in violation of his right to free speech under the United States Constitution.

"'[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Crouse</u>, 848 F.3d at 583 (quoting <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982))). "To defeat a qualified immunity defense, a plaintiff must show '(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" <u>Id.</u> (quoting <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 735 (2011) (internal citations omitted)). "In order to hold that a right is clearly established, a court does not need to find 'a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.'" <u>Id.</u> (quoting <u>Ashcroft</u>, 563 U.S. at 741.) "The qualified immunity inquiry depends on the official's 'perceptions at the time of the incident in

42

question.'" Id. (quoting Rowland v. Perry, 41 F.3d 167, 173 (4th Cir. 1994) (internal citations omitted)).

Case law from the late 1980s and forward establishes that an officer may not terminate an employee in violation of his First Amendment right to free speech. Rankin, 483 U.S. at 383 ("It is clearly established that a State may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech."); See also Cromer, 88 F.3d at 1325.

The Fourth Circuit in Cromer discussed the second element of the Pickering-Connick balancing test at length to determine whether a reasonable officer would have known of the clearly established right. Cromer, 88 F.3d at 1330-31 (holding the defendant was not entitled to qualified immunity). In Cromer, the Fourth Circuit found the interests of the government of "discipline, morale, and good working relationships," was outweighed by employee's interest in communicating about a matter of public concern. Id. at 1329-31.

Similarly, the Fourth Circuit in Ridpath v. Bd. of Governors Marshall Univ, 447 F.3d 292 (4th Cir. 2006), observed "[a]nd because of the 'sophisticated balancing' involved in First Amendment questions, 'only infrequently will it be clearly established that a public employee's speech on a matter of public concern is constitutionally protected.'" Ridpath, 447

F.3d at 320 (quoting McVey, 157 F.3d at 277). The Fourth Circuit found in Ridpath the defendants were not entitled to qualified immunity, noting "[s]till, public employers enjoy only qualified – not absolute – immunity, and a public employer can find no refuge in qualified immunity when an adverse employment decision clearly contravenes a public employee's First Amendment rights." Id. at 320-21.

In the instant case, a reasonable officer in the position of Defendants Peck and Mitchell would have known of the clearly established right to free speech and that plaintiff's termination violated that right.

Therefore, Defendants Peck and Mitchell's motion for summary judgment as to plaintiff's claim of 42 U.S.C. § 1983 retaliatory discharge in violation of his right to free speech under the United States Constitution is DENIED.

G. **Violation of Procedural Due Process by Deprivation of Liberty Interest**

Defendants Peck and Mitchell have moved for summary judgment on plaintiff's claim under 42 U.S.C. § 1983 for deprivation of his liberty interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

"[A] Fourteenth Amendment 'liberty interest is implicated by public announcement of reasons for an employee's discharge.'" Sciolino v. City of Newport News, Va., 480 F.3d 642, 645-46 (4th

44

Cir. 2007) (quoting Johnson v. Morris, 903 F.2d 996, 999 (4th Cir. 1990)). A § 1983 claim arising from such a public announcement concerns the Fourteenth Amendment: (1) liberty to engage in any of the common occupations of life and (2) right to due process where a person's good name, reputation, honor, or integrity is at stake because of government action. Sciolino, 480 F.3d at 646 (internal citations omitted).

For a claim under the Due Process Clause for violation of this liberty interest, a plaintiff must show the charges against him: (1) placed a stigma on his reputation; (2) were made public by the employer; (3) were made in conjunction with his termination or demotion; and (4) were false. Id. (citing Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 172 n.5 (4th Cir. 1988)). "[T]he constitutional harm, however, 'is not the defamation' itself; rather it is the 'denial of a hearing at which the dismissed employee has an opportunity to refute the public charge.'" Id. at 649 (quoting Cox v. N. Va. Transp. Comm'n, 551 F.2d 555, 558 (4th Cir. 1976). "Indeed, decades earlier, in its decision in Bd. of Regents v. Roth, the Supreme Court recognized that 'notice and an opportunity to be heard are essential' when a public employee's liberty interest is infringed by a charge implying such serious character defects as 'dishonesty[ ] or immorality' lodged in the course of an injury such as failure to rehire." Ridpath, 447 F.3d at 313-14

45

(quoting Bd. of Regents v. Roth, 408 U.S. 564, 573 (1972) (internal quotation marks omitted)). Finally, the Fourth Circuit reiterated the finding of the Supreme Court, "[f]undamental to due process is an opportunity to be heard – 'an opportunity which must be granted at a meaningful time.'" Sciolino, 480 F.3d at 653 (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)).

In the instant case, Defendants Peck and Mitchell move for summary judgment on plaintiff's procedural due process claim for deprivation of liberty interest for the following reasons: Defendant Mitchell was not responsible for making any decisions about what sort of appeal or grievance process would be provided to plaintiff; plaintiff did not clearly request a "name clearing hearing"; plaintiff did not contest the accuracy of the underlying allegations; Village did not voluntarily disclose plaintiff's termination letter; plaintiff had alternative state law processes to contest the accuracy of the termination letter; plaintiff has not been foreclosed from future public employment; and Defendants Peck and Mitchell are entitled to qualified immunity. Defendants also argue plaintiff's liberty interest claim is moot. [D.E. #42 at 1; D.E. #43 at 28-29].

### a. Charges Placed a Stigma on Plaintiff's Reputation

First, "[t]he type of communication that gives rise to a protected liberty interest implies 'the existence of serious

46

character defects such as dishonesty or immorality.'" Ridpath,
447 F.3d at 308 (quoting Robertson v. Rogers, 679 F.2d 1090,
1092 (4th Cir. 1982) (internal citations omitted)). Whether
communication is stigmatizing depends upon whether the
communication "imposed on [the plaintiff] a stigma or other
disability that foreclosed his freedom to take advantage of
other employment opportunities. Roth, 408 U.S. at 573. The
record reflects the statements placed in the termination letter
by Defendants Peck and Mitchell concluded that plaintiff's
communications were in violation of "Village policies related to
harassment and sexual harassment (Article V: Conditions of
Employment and Article IX), discourteous treatment of other
employees (Article IX), and inappropriate electronic
communications (Article IX)." [D.E. #47-2 at 1]. The letter
continued to state "[t]he egregious nature of these
communications and the flagrant violation of policy constitutes
detrimental personal conduct and is thereby grounds for
immediate termination." Id.

Allegations of "harassment," "sexual harassment," and
"detrimental personal conduct" fall within the conduct that
could be classified as "serious character defects" and
"immorality" as provided by the Fourth Circuit in Ridpath.
Ridpath, 447 F.3d at 308 (quoting Robertson v. Rogers, 679 F.2d
1090, 1092 (4th Cir. 1982) (internal citations omitted)).

47

These allegations "foreclosed his freedom to take advantage of other employment opportunities" as plaintiff was unemployed from August 2014 through November 2015. [D.E. #47-1 at 7]. Defendants Peck and Mitchell assert plaintiff was not foreclosed from employment opportunities as he is currently employed. [D.E. #43 at 20]. Plaintiff was not able to obtain public employment and found a job as a security guard for a private company on Ascension Island, a British territory in the middle of the South Atlantic Ocean. [D.E. #47-1 at 6-9]. Finding the facts in the light most favorable to the non-moving party, Defendants Peck and Mitchell have not shown that the statements were not "stigmatizing" as to the first element of the violation of due process claim asserted by plaintiff.

### b. Charges Were Made Public by the Employer

The Fourth Circuit has found that as to the second element of the due process violation claim for deprivation of liberty interest, the plaintiff must allege and show "a likelihood that prospective employees (i.e., employers to whom he will apply) or the public at large will inspect the file." Sciolino, 480 F.3d at 650. In the instant case, the charges in the termination letter and Form F-5B were made public to news media and the Criminal Justice Education and Training Standards Commission, respectively, as is undisputed by the parties. Defendants Peck and Mitchell assert that the publication was not made

48

voluntarily as Defendant Peck and Human Resources felt respectively obligated to give the termination letter in response to media requests pursuant to the North Carolina Public Records Act and N.C.G.S. 160A-168(b)(11). However, the fact that the charges were made public satisfies element two, regardless of whether the "making public" was "voluntary." The charges were not only likely to be made public, but were in fact made public as is undisputed by the parties. Finding the facts in the light most favorable to the non-moving party, summary judgment is not appropriate as to this element of the due process violation.

### c. Charges Were Made in Conjunction with Plaintiff's Termination

The Fourth Circuit noted in Ridpath, "[w]e have required that, in order to deprive an employee of a liberty interest, a public employer's stigmatizing remarks must be 'made in the course of a discharge or significant demotion.'" Ridpath, 447 F.3d at 309 (quoting Stone, 855 F.2d at 172 n. 5). The charges in the instant case were stated explicitly in the letter with which plaintiff was terminated. [D.E. #47-2 at 1]. On September 8, 2014, Defendant Mitchell prepared the Form F-5B, Affidavit of Separation, stating as the reason for separation and investigation that a "complaint was filed," regarding "inappropriate electronic communications that created a hostile

49

work environment in violation of Village policy." [D.E. #47-5 at 1, 2]. Thus, statements alleged in the amended complaint were those of the termination letter and Form F-5B, specifically prepared in conjunction with plaintiff's termination on August 28, 2014. [D.E. #47-2 at 1, #47-5 at 1, 2]. Although with regard to the motion for summary judgment on plaintiff's claim of defamation, Defendants Peck and Mitchell argue there was no causal relationship between the speech of plaintiff and his termination, with regard to the claim of deprivation of his liberty interest under the Due Process Clause, Defendants Peck and Mitchell do not dispute the charges were made in conjunction with plaintiff's termination.

### d. Charges Were False

"There can be no deprivation of liberty unless the stigmatizing charges at issue are false." Ridpath, 447 F.3d at 312 (citing Stone, 855 F.2d at 172 n. 5). Defendants Peck and Mitchell argue the charges were not false, as plaintiff did not dispute sending the text messages. [D.E. #43 at 19; D.E. #47-1 at 99-100]. Defendants cite Codd v. Velger, 429 U.S. 624, 627-28 (1977), arguing plaintiff, like plaintiff in Codd, only disputes the characterization of his conduct, not the conduct itself, and therefore no hearing was needed. Codd, 429 U.S. at 628. However, the instant case is distinguished from Codd because the falsity alleged is not the falsity of the

characterization of the conduct or speech of plaintiff, but rather the falsity of the allegations against plaintiff as listed in the termination letter and Form F-5B. [Am. Compl. ¶¶ 63, 64, 77, 80]. The Supreme Court reversed the Court of Appeals in Codd, because the plaintiff did not dispute the "substantial accuracy of the report." Codd, 429 U.S. at 628 (report stated officer had attempted suicide and the Supreme Court found "respondent has at no stage of this litigation affirmatively stated that the 'attempt' did not take place as reported"). In the instant case, Plaintiff contests the substantial accuracy of each allegation in his termination letter and Form F-5B on the grounds the allegations are inconsistent with Village policy definitions and testimony of alleged "complainant." [D.E. #47 at 10, 19; #47-1 at 100-01; #47-3 at 78-79, 82; #47-4 at 253-259; #47-8 at 2; D.E. #47-10 at 33, 38-39].

According to Defendant Mitchell, the "complaint," referenced in the Form F-5B, was filed by Officer Nick Hiatt. [D.E. #47-4 at 133-34]. Defendant Mitchell testified under oath in her deposition Lieutenant Cox was being harassed by the text messages sent by plaintiff. [D.E. #47-4 at 138, 172]. However, the alleged "complainant" denied ever being offended by plaintiff in regard to the text messages he sent. [D.E. #47-8, at 2]. The lieutenant who allegedly felt harassed denied ever

51

being harassed by plaintiff in regard to the text messages he sent. [D.E. #47-10, at 33, 38-39].

The reasons for termination stated in the termination letter included "harassment", "sexual harassment", "discourteous treatment of other employees", and "inappropriate electronic communications." [D.E. #47-2 at 1]. Defendant Peck, who signed the termination letter, testified plaintiff and other officers were terminated not for the reasons listed in the termination letter but because they "were jerks" and "disrespectful of the chain of command." [D.E. #47-3 at 83]. Plaintiff has submitted sufficient evidence for a reasonable juror to find the allegations against plaintiff were false.

### e. Qualified Immunity

Defendants Peck and Mitchell assert they are entitled to qualified immunity in their individual capacities on plaintiff's claim under 42 U.S.C. § 1983 for deprivation of liberty interest in violation of the Due Process Clause of the United States Constitution.

"'[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Crouse, 848 F.3d at 583 (quoting Pearson, 555 U.S. at 231 (quoting Harlow, 457 U.S. at 818)). "To defeat a qualified immunity defense, a

52

plaintiff must show '(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" <u>Id.</u> (quoting <u>Ashcroft</u>, 563 U.S. at 735 (internal citations omitted)). "In order to hold that a right is clearly established, a court does not need to find 'a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.'" <u>Id.</u> (quoting <u>Ashcroft</u>, 563 U.S. at 741.) "The qualified immunity inquiry depends on the official's 'perceptions at the time of the incident in question.'" <u>Id.</u> (quoting <u>Rowland</u>, 41 F.3d at 173 (internal citations omitted)).

The Fourth Circuit in <u>Ridpath</u> explained the second element of the qualified immunity question is not precluded by the lack of case law that speaks to the very act of defendants being in violation of a plaintiff's rights. <u>Ridpath</u>, 447 F.3d at 313. The Fourth Circuit found "[t]hus, 'officials can still be on notice that their conduct violates established law even in novel factual circumstances.'" <u>Id.</u> (quoting <u>Hope v. Pelzer</u>, 536 U.S. 730, 741 (2002). "The 'salient question' is whether the state of the law at the time of the events in question gave the officials 'fair warning' that their conduct was unconstitutional." <u>Id.</u>

Similarly, in the instant case, a reasonable official in the position of Defendants Peck and Mitchell would have known that due process rights were clearly established, as the Supreme Court "recognized that 'notice and an opportunity to be heard are essential' when a public employee's liberty interest is infringed by a charge implying such serious character defects as 'dishonesty[] or immorality' lodged in the course of an injury such as [adverse employment action]." Id. at 313-14 (quoting Roth, 408 U.S. at 573. Considering that the violated right was clearly established and a reasonable official would have known of this right, qualified immunity does not apply.

Therefore, Defendants Peck and Mitchell are not entitled to qualified immunity as to plaintiff's claim of 42 U.S.C. § 1983 for deprivation of liberty interest in violation of the Due Process Clause of the United States Constitution.

**f. Mootness**

Defendants also argue plaintiff's liberty interest claim is moot because plaintiff was offered a name-clearing hearing on September 30, 2016, which offer was denied on March 10, 2017. [D.E. #65 at 1-2]. However, the Fourth Circuit observed "[a]n opportunity to clear your name after it has been ruined by dissemination of false, stigmatizing charges is not 'meaningful.'" Sciolino, 480 F.3d at 653. Thus, Defendants Peck and Mitchell's argument that plaintiff's allegation that a post-

54

termination hearing was moot is without basis in law and in fact as plaintiff's amended complaint alleged deprivation of liberty interest occurred when he was not afforded a hearing prior to termination and prior to publication. [Am. Compl. ¶¶ 61, 62, 63, 77, 78]. Defendants argue plaintiff's initial request for a name-clearing hearing was not clear. [D.E. #43 at 20-21]. The clarity of a request for a name-clearing hearing is not required as the Court in Sciolino found "an employer need only grant a name-clearing hearing if it will make false damaging charges about a former employee available to those likely to request the information, e.g., future employers to whom the employee will apply." Sciolino, 480 F.3d at 650. Therefore, a name-clearing hearing was already required under Sciolino, and the clarity of the request is not dispositive.

Defendant Mitchell asserts she was not responsible for making any decisions about what sort of appeal or grievance process would be provided to plaintiff, and as a result, plaintiff's due process claim for deprivation of liberty interest should be dismissed against her. However, Defendant Mitchell does support this argument with evidence of law or fact in the memorandum of law. [D.E. #43]. Defendant Mitchell's assertion fails without supporting case law.

Defendants Peck and Mitchell also argue plaintiff's claim for violation of due process by deprivation of liberty interest

55

should be dismissed because there are available adequate state remedies. While available adequate state remedies preclude claims under the North Carolina Constitution, but not under the United States Constitution, Corum, 413 S.E.2d at 289, defendants have not cited sufficient case law to support that all United States Constitutional claims are precluded.

Therefore, Defendants Peck and Mitchell's motion for summary judgment as to plaintiff's claim of 42 U.S.C. § 1983 deprivation of liberty interest in violation of Due Process Clause of the United States Constitution is DENIED.

## CONCLUSION

For the foregoing reasons, plaintiff's Motion for Extension of Time to Complete Discovery, [D.E. #37], is GRANTED. Plaintiff's Motion for Oral Argument in Opposition, [D.E. #48], and plaintiff's Motion for Extension of Time to Respond and Length of Response, [D.E. #62], are DENIED. Defendant Village's Motion for Summary Judgment, [D.E. #41], is GRANTED in part and DENIED in part. Defendants Peck and Mitchell's Motion for Summary Judgment, [D.E. #42], is GRANTED in part and DENIED in part.

Remaining before the court are the following claims:

1. Claims One and Three[7] – 42 U.S.C. § 1983 Violation of Constitutionally Guaranteed Liberty Interest in Violation of Procedural Due Process Clause as against Defendants Peck and Mitchell, in their individual capacities

2. Claim Two – 42 U.S.C. § 1983 Claim of Retaliatory Discharge in Violation of First Amendment Right to Free Speech as against Defendants Peck and Mitchell, in their individual capacities

3. Claim Four – Defamation as against Defendants Peck, Mitchell, in their individual capacities, and as against Village

4. Claim Seven – Wrongful Discharge as against Village

This $30^{\mathcal{TH}}$ day of March 2017.

Malcolm J. Howard
Senior United States District Judge

At Greenville, NC
#35

---

[7] Plaintiff's Amended Complaint, [D.E. #28], pleads two separate claims for § 1983 violation of liberty interest and procedural due process under the United States Constitution. However, as there is no property interest in plaintiff's employment, it is alleged deprivation of his liberty interest that is the subject of his procedural due process claim.

57